E-FILED; Howard Circuit Court
Docket: 1/25/2026 9:41 PM; Submission: 1/25/2026 9:41 PM
Envelope: 24809156

**IN THE CIRCUIT COURT FOR HOWARD COUNTY, MARYLAND**

KIMBERLY MULLIKIN
29533 MATTHEWSTOWN RD., APT A
EASTON, MD 21601

*on her own behalf and on behalf of all others similarly situated,*

*Plaintiff,*

v.

FABLETICS, INC.
800 APOLLO STREET
EL SEGUNDO, CA 90245

FABLETICS, LLC
800 APOLLO STREET
EL SEGUNDO, CA 90245

FABLETICS GC, LLC
800 APOLLO STREET
EL SEGUNDO, CA 90245

**Serve on:**

MARYLAND DEP'T OF ASSESSMENT AND TAXATION
700 E. PRATT STREET, STE. 2700
BALTIMORE, MD 21202

*Defendants.*

**JURY TRIAL REQUESTED**

Case No. C-13-CV-26-000077

**CLASS ACTION COMPLAINT**

## I. PRELIMINARY STATEMENT

1. This is a class action against Defendants Fabletics, Inc., Fabletics, LLC, and Fabletics GC, LLC (collectively "Fabletics" or "Defendants") for sending false, deceptive, and misleading email marketing to Maryland consumers.

2. Fabletics uses a variety of tricks and deceptive language deliberately designed to influence consumer behavior and deliberately designed to trick Maryland consumers into making impulsive purchases. For example, Fabletics often uses subject lines to tout limited-time sales, using language such as "ENDS TONIGHT" or "LAST CALL" in an attempt to induce customers to purchase items out of fear that they might miss an unusually good deal ("**False Urgency Emails**"). In reality, the sale never "ENDS TONIGHT" and it is never the "LAST CALL" for the sale, as the sale continues in perpetuity. In another sleight of hand, Fabletics lures potential customers with email subject lines that misrepresent the contingent nature of a particular promotion ("**Minimum Purchase Emails**"). For example, the subject line "get $10 off your next purchase!" leads reasonable consumers to believe that ***any*** online purchase will be subject to a $10 discount. In reality, the fine print of the email discloses that, in order to obtain the $10 off promised in the subject line, the recipient needs to (a) complete an online survey, and (b) spend a minimum amount of $50 on their next purchase, which contradicts the subject line. Finally, Fabletics attempts to improperly influence consumer behavior by sending subject lines that misrepresent that a consumer has qualified to receive "free" merchandise. For example, the subject line "FREE LEGGINGS INSIDE" leads reasonable consumers to believe that they have qualified to obtain leggings for free (*i.e.* at no cost) ("**Free Gift Emails**"). In reality, the consumer must make a minimum purchase of $79 in order to get the promised products for "FREE."

3. In these and other instances—seemingly limited only by the company's marketing creativity—Fabletics is in violation of the Maryland Commercial Electronic Mail Act ("MCEMA"), Maryland Code Annotated, Commercial Law §§ 14-3001 *et seq*., which prohibits senders of commercial electronic mail from sending emails with materially false or misleading information in the subject line, which has the capacity, tendency, or effect of deceiving the

recipient. Each of the emails identified herein (the "Subject Emails"), and others not identified, contains materially false or misleading information, and has the capacity, tendency, or effect of deceiving the recipients.

4. The Federal Trade Commission has directed that sellers should not "make a 'limited' offer which, in fact, is not limited." 16 C.F.R. § 233.5; *see also Brown v. Old Navy, LLC*, 567 P.3d 38 (Wash. 2025) (recognizing that such false or misleading emails violate Washington's Commercial Electronic Mail Act, Revised Code of Wash., § 19.190.020, *et seq*., the statute upon which MCEMA was based). The FTC has also directed that sellers should not make representations that a product can be obtained for "free" unless "all the terms, conditions and obligations upon which receipt and retention of the 'Free' item are contingent [are] set forth clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood." 16 C.F.R. § 251(c) (emphasis added) (also stating that "disclosure of the terms of the offer set forth in a footnote of an advertisement to which reference is made by an asterisk or other symbol placed next to the offer, is not regarded as making disclosure at the outset.") (emphasis added); *see also Brown v. Old Navy*.

5. By sending emails with subject lines containing materially false and misleading information to Named Plaintiff and the Class (defined below), Fabletics violates MCEMA.

6. By sending these false and misleading subject lines, Fabletics intends to deceive the recipients.

7. Named Plaintiff brings this action as a class action on behalf of persons residing in Maryland, to whom Fabletics sent emails with materially false and/or misleading subject lines, which have the capacity, tendency, or effect of deceiving the recipients. Named Plaintiff's

requested relief includes an award to Named Plaintiff and Class members of statutory damages for each illegal email, and an award of attorneys' fees and costs.

## II. JURISDICTION

8. The Circuit Court of Maryland has jurisdiction over this case under MD. CODE ANN., CTS. & JUD. PROC. § 1-501.

9. The Circuit Court of Maryland has personal jurisdiction over Defendants pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-103(1)-(3), as Fabletics systematically and continually transacts business in Maryland, maintains leases in the state of Maryland, operates stores located in the state of Maryland, the case arises, in part, out of a transaction that took place within Maryland, and Fabletics contracts to supply goods or services in Maryland.

## III. PARTIES

10. Named Plaintiff Kimberly Mullikin is a natural person currently residing at 29533 Matthewstown Rd., Apt. A, Easton, MD 21601 (Talbot County).

11. Defendant Fabletics, Inc. is a Delaware Corporation doing business within this state and with its principal place of business located at 800 Apollo Street, El Segundo, CA 90245.

12. Defendant Fabletics, LLC is a Delaware Limited Liability Company doing business within this state and with its principal place of business located at 800 Apollo Street, El Segundo, CA 90245.

13. Defendant Fabletics GC, LLC is a Delaware Limited Liability Company doing business within this state and with its principal place of business located at 800 Apollo Street, El Segundo, CA 90245.

## IV. FACTUAL ALLEGATIONS

### A. MCEMA prohibits initiating or conspiring to initiate the transmission of commercial e-mails with false or misleading information in the subject lines.

14. MCEMA, by its terms, regulates deceptive email marketing.

15. MCEMA was enacted to protect consumers' interests in being free from deceptive commercial e-mails.

16. An injury occurs under MCEMA any time a commercial e-mail is transmitted that contains materially false or misleading information in the subject line, which has the capacity, tendency, or effect of deceiving the recipient.

17. Under MCEMA, it is irrelevant whether misleading commercial e-mails were solicited.

18. MCEMA creates an independent, limited, private right of action, which can be asserted by a person who is the recipient of a commercial electronic mail message which contains false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient. *See, e.g.,* MCEMA § 14-3003.

19. Violations of MCEMA create standalone causes of action.

### B. Fabletics initiated (or conspired to initiate) the transmission of commercial e-mails with false or misleading information in the subject lines.

20. Fabletics has initiated (or conspired to initiate) the transmission of commercial electronic mail messages with materially false or misleading information in the subject lines to Named Plaintiff and members of the Class.

21. The emails were electronic mail messages, in that they were each an electronic message sent to an electronic mail address; the emails from Fabletics also referred to an internet

domain, whether or not displayed, to which an electronic mail message can or could be sent or delivered.

22. Fabletics sent the emails for the purpose of promoting its goods for sale.

23. The emails were sent at Fabletics's direction and were approved by Fabletics.

24. Fabletics violates MCEMA because many of the statements in the email subject lines are materially false and misleading on several fronts. There are numerous examples of Fabletics emails that can be shown to have false and misleading information in the subject lines just by reviewing the subject lines of other Fabletics emails. Others can be shown to have false and misleading information in the subject lines just by reviewing the fine print in the body of the emails. The facts alleged below show the types of false and misleading email subject lines Fabletics sends to Maryland residents.

25. Fabletics's false or misleading subject lines can be broken into at least three categories: (a) subject lines that describe a specific, limited-time promotion that is not, in fact, limited to the timeframe described in the subject line; (b) subject lines stating without qualification that a particular discount is being offered when, in reality, the discount is contingent either upon the recipient making a minimum purchase, or upon the recipient completing a survey ***and*** making a minimum purchase; and (c) subject lines stating without qualification that the recipient has received a free gift when, in reality, the recipient must spend a minimum amount of money on other merchandise in order to obtain the purportedly "free" products.

26. In each instance, the subject line conveys an objective statement of fact that is materially and objectively false or misleading and that Maryland residents would depend on in making consumer purchasing decisions. A list of examples of subject lines from each category is

provided below. Discovery will show additional emails in each of these categories and potentially other categories of false or misleading subject lines.

i. **<u>False Urgency Emails</u>**

27. Fabletics's emails frequently advertise the "limited-time" nature of sales, discounts, and prices. For example, Fabletics frequently sends emails indicating that a promotion "ENDS TONIGHT" or that is the consumer's "LAST CHANCE" to obtain the promotion. In reality, and by design, it is never the consumer's last chance to obtain the deal, and the deal never actually ends that night. In fact, the promotion does not ***ever*** end. That is because the promotion that was purportedly in its last day has been ongoing since at least November 2025, and has continued in perpetuity since then. These types of emails have the capacity of deceiving consumers into believing that it is their last chance to obtain a particular promotion, when that representation is objectively false.

28. For example, on November 25, 2025, purportedly as part of its Black Friday promotion, Fabletics sent Named Plaintiff an email with the subject line: "the clock is ticking… [80% OFF EVERYTHING]." (Brackets in original). Four days later, on November 29, 2025, Fabletics sent another email with the subject line: "[ENDS TONIGHT] Our Biggest Sale of the Year…" (Brackets in original). The "biggest sale of the year" was the 80% off everything promotion offered in conjunction with the November 25, 2025 email. Later that night, Fabletics sent another email with the subject line: "LAST CALL 🚨." Again, the body of the email indicated that it was the "LAST CALL" for 80% off everything. The fine print in ***each*** of those emails indicated that the sale did not, in fact, "END[] TONIGHT," and it was not, in fact, the "LAST CALL" for the promotion. Instead, the fine print indicated that the sale would end the next day, on November ***30***, 2025. ***But*** the promotion did ***not*** end on November 30, 2025 as represented in the

fine print of the emails. Instead, the exact same "80% off everything" promotion was offered again on December 3, 2025. On that date, Fabletics sent an email with the subject line: "[LAST CHANCE] Our Biggest Sale of the Year." (Brackets in original). In that email, Fabletics ***again*** purported to offer the exact same promotion that was represented as having ended days ago. And ***again,*** in the fine print of the December 3 email, Fabletics indicated that that the "80% off everything" promotion would, in fact, last until December 31, 2025, more than ***one full month*** after the sale was initially represented as coming to an imminent end. Thus, contrary to the representation in the subject line that it was the "LAST CHANCE" for the sale, the sale was slated to last for almost four more weeks. Astonishingly, as of the date of the filing of this Complaint, Fabletics is ***still*** offering the "limited time" 80% off everything promotion on its website, and via email, and has not stopped offering that promotion since the first time it sent Named Plaintiff the email indicating that the sale "ENDS TONIGHT" on November 29, 2025. *See Figure 1*, screenshot from January 23, 2026.




*(Figure 1) – screenshot of the homepage for www.fabletics.com as of January 23, 2026 (highlights added).*

29. By stating that a sale is ending at a specific time, Fabletics suggests an offer's rarity or urgency, stimulating consumers' desire to get the deal before it's gone while simultaneously inducing fear of missing a good buy.

30. Fabletics deliberately designs the subject lines of its marketing emails to tap into consumer urges to obtain a deal before it's gone. These types of subject lines, including those identified herein, contain materially false and misleading information, which has the capacity, tendency, or effect of deceiving the recipient into believing an objectively false fact (*i.e.* the end date of the sale).

31. Discovery will show that Fabletics employees did not gather at the end of the planned sale and determine that the sale should be extended. Instead, the sale was always planned to extend past the represented end date, as demonstrated by the fine print at the bottom of the emails identified herein. Fabletics regularly claims or suggests that sales will only be available for a certain amount of time in the email subject line, and in every instance, that representation is false. The sale is available in perpetuity, and so any claims that the sale is limited-time are false and misleading, and have the capacity, tendency, or effect of deceiving recipients about the true duration of the promotions.

32. The clear purpose of this tactic is to grab the consumer's attention and induce immediate action to secure savings that will not be available beyond a specific window of time. Research indicates that limited-time discounts create a sense of urgency that changes consumer decision making, including by persuading customers to purchase items sooner than they otherwise would, purchase more or different items than they otherwise would, or forego comparison shopping. Fabletics designs the subject lines of its marketing emails to tap into these consumer urges—going so far in some emails as to feature a siren emoji and words such as "LAST CALL"

in the subject line. Fabletics leverages this tactic and its well-known psychological effects to influence consumer behavior in a deceitful way.

33. Fabletics likely would not use this marketing tactic, or at least would use it less frequently, if it were not successful in generating sales. Fabletics's frequent use of this tactic suggests discovery will show that Fabletics has conducted A/B testing of these email subject lines and determined that this tactic increases sales, which in turn, will show that representations of fact in an email subject line regarding the expiration or extension of limited-time promotions are among the type of facts Maryland "residents would depend on in making their consumer decisions." *Brown v. Old Navy, LLC*, 567 P.3d 38.

34. The FTC has recognized that a common method of "manipulate[ing] consumer choice by inducing false beliefs" is creating a false sense of urgency that a consumer's time to act is limited. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

35. The FTC has stated that such "False Limited Time Message[s]" create "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light* at 22.

36. These types of "False Limited Time Message[s]" are psychologically effective, and there is "considerable evidence" that, generally speaking, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture* at 26.

37. The purpose of putting this perceived time pressure on consumers is to attempt to induce consumers to make hasty purchases by "rely[ing] on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

38. When confronted with this time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

39. False time scarcity claims thus have the capacity to deceive consumers by making them think that they have to act now, or they'll miss the opportunity to get the deal.

40. False time scarcity claims are a consistent theme in Fabletics's email marketing tactics, and Fabletics uses these tactics in an attempt to induce customers to purchase its products based on fear of missing a good deal, and not genuine desire to purchase the products.

41. Fabletics has sent many emails using this tactic, and in each instance, the purpose of placing these fictional time limits on the deals was to attempt to induce the recipient into making a purchase ***now***, preying on their fear of missing the deal. And thus, the information contained within the subject lines of the emails set forth below was materially false and/or materially misleading.

ii. **Minimum Purchase Emails**.

42. Fabletics also frequently sends emails with subject lines stating that a particular offer is available without qualification when, in reality, the offer is only available for orders above a certain dollar amount that is not identified in the subject line. In other instances, the offer is only available for individuals who sign up for a recurring monthly subscription to Fabletics's VIP Membership Program, which costs $69.95 per month. Such false and misleading statements trick the consumer into thinking the promotion has no strings attached. In reality, these seemingly unconditional offers are subject to minimum spend requirements that are not disclosed in the

subject line. This is a classic bait-and-switch tactic that entices consumers to believe the promotional offer has broader application than it truly does.

43. For example, on December 15, 2025, Fabletics sent Named Plaintiff an email with the subject line: “Don’t Miss This: $12 Bestselling Leggings.” But it is not revealed in the subject line that, in order to obtain the leggings for $12, the consumer must enroll in Fabletics’ VIP Membership Program, which costs $69.95 per month. And this significant and undisclosed requirement is only ever disclosed in the fine print of the body of the email. *See Figure 2*.




*(Figure 2) – showing the body of the email and the fine print disclosing (inadequately) that the recipient must enroll in the VIP Membership Program and pay $69.95 per month in order to get the leggings for $12.*

44. There is nothing in the subject line of the December 15, 2025 email that communicates to the consumer that the advertised promotion is in any way contingent upon the consumer enrolling in the recurring VIP Membership Program. In other words, it was false and misleading for Fabletics to state that the recipient could obtain leggings for $12.99, when in fact the leggings could only possibly be obtained for $12.99 if the consumer enrolled in a recurring, costly monthly subscription. This was an objective "representation[] of fact" regarding "the duration or availability of a promotion," which is the type of fact Maryland residents "depend on in making their consumer decisions." *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025).

45. Additionally, Fabletics also frequently sends emails indicating that a recipient will obtain a specific discount, but fails to disclose that the discount promised in the subject line is contingent on several additional requirements. For example, on January 8, 2026, Fabletics sent Named Plaintiff an email with the subject line: "Kim, get $10 off your next purchase!" But it is not revealed in the subject line that, in order to obtain $10 off her next purchase, Named Plaintiff would have to (a) complete an online survey, and (b) spend at least $50 on her next purchase. And these significant additional and undisclosed requirements are only ever disclosed in the fine print of the body of the email. *See Figure 3.*

(*continued on next page*)

| | |
|---|---|
| WOMENS | MENS |
| SCRUBS | YITTY |




VISIT ONE OF OUR STORES
SEE ALL STORES

**Fabletics** | 555 Aviation Blvd., El Segundo, CA 90245
You are receiving this email because you signed up for personalized matches from fabletics.com.

*Invitation only. $10 Off $50+ offer is eligible for select customers only. Discount code will be provided upon completion of survey. Offer cannot be combined with any other offer, promotion or discount. This offer is valid with a purchase threshold of $50 (before tax & shipping). Discount excludes any applicable taxes or shipping. Limit one-time offer per customer and for online redemption only. Offer is available starting on the email send date (PST) and expires 01/13/26 at 11:59 PM Pacific Standard Time (PST). Fabletics member credits, store credits and gift cards may be used toward order to which offer is applied. Offer cannot be applied to previous purchases or the purchase of gift cards and cannot be redeemed for cash. Returns and exchanges are permitted for items purchased with this offer. Fabletics' standard terms of service regarding shipping, returns and exchanges apply. Terms are subject to change at any time without notice.

*(Figure 3) – showing that the fine print of this particular email indicates that, in order to get the promised $10 off, the consumer must spend a minimum of $50 on their next purchase.*

46. May of Fabletics's emails do not, in fact, contain any material limitations on offers for specific discounts identified in subject lines. For example, on December 21, 2025, Fabletics sent Named Plaintiff an email with the subject line: "A Treat for You // $10 Off." In order to receive the $10 off, Named Plaintiff would simply need to make a purchase in excess of $10. Thus, the $10 off promised in the subject line of the December 21, 2025 email was not false or misleading, since there were no material conditions on receiving the $10 off. But the fact that Fabletics sends emails that ***do not*** contain material limitations on the offers, and others that ***do*** contain such material limitations serves to highlight the false and misleading nature of the emails that ***do*** contain material limitations on the offer, but leave out those material limitations from the subject lines. This also serves to create more confusion and misunderstanding in consumers' minds when reading and evaluating the statements made in the subject lines of these types of emails.

iii. **Free Gift Emails**.

47. Finally, Fabletics sends emails with subject lines that promise that a "FREE" gift is contained within the email. However, the gift is never actually "FREE," and is always contingent upon the consumer purchasing other merchandise. These types of emails have the capacity of deceiving the recipient into believing that they have already qualified to receive free gifts, when in fact, the recipient must purchase other full-priced merchandise in order to obtain the "free" gift promised in the subject line.

48. For example, on December 31, 2025, Fabletics sent Named Plaintiff an email with the subject line: "FREE LEGGINGS INSIDE." However, in order to obtain the "FREE" leggings, which are purportedly already "inside" the email, Named Plaintiff would have had to spend $79 on other merchandise, a condition that is not disclosed in the subject line of the email. Therefore, the leggings were not "FREE," and thus the information in the subject line of this email was false and/or misleading, and had the capacity of deceiving recipients into thinking that they had already qualified to receive free leggings, in violation of MCEMA.

49. It is not clear by examining the subject line that the "free" gift is contingent upon the recipient purchasing a minimum quantity of other products. In fact, if a consumer reads this subject line and makes a purchase in an amount under $79, the consumer cannot obtain the free leggings promised in the subject line. This type of bait-and-switch tactic has the capacity of deceiving the recipient into thinking they have already qualified to receive a free product, when in every instance, the recipient has not.

50. The FTC has stated that "[w]hen making 'Free' or similar offers all the terms, conditions and obligations upon which receipt and retention of the 'Free' item are contingent

should be set forth clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood." 16 C.F.R. § 251.1.

51. The conditions and obligations upon which receipt of the "free" gifts Fabletics says the recipient will obtain are not set forth in the subject lines (*i.e.* the conditions are not set forth "at the outset of the offer").

52. In other instances, Fabletics does not even disclose the minimum purchase amount in the body of the email, and only discloses the minimum purchase requirement in the fine print of the email. For example, on December 29, 2025, Fabletics sent Named Plaintiff an email with the subject line: "Kim's Free Gift." However, in the body of the email, below the primary text and graphics of the advertisement, Fabletics disclosed, in fine print, "Free Gift ***with $79+ purchase*** offer is valid on select Fabletics product, excludes Fabletics Scrubs, and is subject to availability." (Emphasis added). Thus, the information in the subject line indicating that Named Plaintiff had obtained a "Free Gift" was false and misleading, and had the capacity of deceiving the recipient about the availability of free products.

53. Fabletics designs the subject lines of its marketing emails to tap into consumer urges to obtain free or discounted products, and in doing so, attempts to induce consumers into spending more money than they otherwise intended when they first received the offer. For example, research shows that a consumer is more likely to spend more money if the deal requires that the consumer spend a minimum amount of money to obtain the promotional discount.

54. And if the consumer chooses not to satisfy the minimum spend, then the consumer will not, in fact, receive the promised free gift or the promised discount, regardless of whether or not the consumer makes a purchase in an amount or quantity under the requisite minimum purchase.

### C. <u>Fabletics sends commercial emails to consumers whom it knows, or has reason to know, reside in Maryland.</u>

55. Fabletics sent the misleading commercial emails to email addresses that Fabletics knew, or had reason to know, were held by Maryland residents, either because (i) Fabletics had a physical address and/or zip code that was associated with the recipient based on past purchases; or (ii) Fabletics had access to or collected data from the recipients regarding their state of residency.

56. Fabletics knows where many of its customers reside through several methods.

57. First, for any person that places an order online from Fabletics, Fabletics associates an email address with a shipping address and/or billing address for that order.

58. Second, Fabletics encourages online shoppers to create online accounts. Customers save information in their Fabletics accounts along with their email address, such as shipping addresses, billing addresses, and phone numbers.

59. Third, Fabletics collects customers' zip codes upon signing up for a Fabletics account, whether or not that person ultimately makes a purchase from Fabletics.

60. Fourth, discovery will show that Fabletics employs methods to track the effectiveness of its marketing emails and to identify consumers that click on links contained in Fabletics's marketing emails, including by identifying their physical location. For example, discovery will also show that Fabletics gathers information such as geocoordinates and IP addresses from individuals who click on links in Fabletics commercial emails, and that Fabletics can use such information to determine whether the recipient is in Maryland.

61. Fifth, Fabletics also utilizes cookies, pixels, and other online tracking technologies to identify and locate the consumers that click on links contained in Fabletics's marketing emails and that visit its website. For example, Fabletics has installed the Meta Pixel on its website, which identifies website visitors and can identify specific Facebook and Instagram users that visit the

Fabletics website; information that can be associated with the data collected by Meta on where that consumer resides. Fabletics also employs tracking technologies provided by Google, Inc., Yahoo! Inc., FullStory, Inc., Twitter, Inc., Microsoft, Inc., and others that may be able to locate consumers in Maryland.

62. Sixth, discovery will also show that Fabletics employs sophisticated third parties who create profiles of customers and potential customers, including their email address and physical location.

63. Lastly, Fabletics also knew, should have known, or had reason to know that it sends marketing emails to Maryland residents due to its large presence in the state and the volume of marketing emails it sends to people around the country.

64. Discovery will show that, at the time it sent the emails with false and misleading information in the subject lines, Fabletics had access to the data described above regarding the location of consumers in Maryland to whom it sent the emails.

**D. Fabletics initiated (or conspired to initiate) the transmission of illegal emails to Named Plaintiff and members of the Class.**

65. At all times relevant to this Complaint, Named Plaintiff resided in Maryland.

66. Named Plaintiff receives emails from Fabletics at a gmail.com email address.

67. Fabletics knows, or has reason to know, that Named Plaintiff's email address is and was held by a Maryland resident. Named Plaintiff has an account with Fabletics reflecting her home addresses in the State of Maryland. Named Plaintiff has made a purchase from the Fabletics website that has been delivered to her home in Maryland. When Named Plaintiff signed up for a Fabletics account, she provided Fabletics with her zip code.

68. Fabletics sent the emails identified in the table below (the "Subject Emails") to Named Plaintiff for the purpose of promoting Fabletics's goods for sale. The brackets identified in the table below are included in the original subject lines.

| **Date** | **Subject line** | **Undisclosed material limitation on the offer set forth in the subject line** |
|---|---|---|
| 11/29/25 | [ENDS TONIGHT] Our Biggest Sale of the Year… | Fine print indicates sale ends on 11/30/25. Sale extended on 12/3/25, and is currently ongoing and has not ended. |
| 11/29/25 | LAST CALL 🚨 | Fine print indicates sale ends on 11/30/25. Sale extended on 12/3/25, and is currently ongoing and has not ended. |
| 12/3/25 | [LAST CHANCE] Our Biggest Sale of the Year | Fine print indicates sale ends on 12/31/25. Sale is currently ongoing and has not ended. |
| 12/15/25 | Don't Miss This: $12 Bestselling Leggings | Fine print indicates that, in order to get leggings for $12, recipient must enroll in VIP Membership Program, which is a recurring, $69.95/month membership. |
| 12/29/25 | Kim's Free Gift | Fine print indicates that, in order to obtain the "free" gift, recipient must purchase $79 worth of other merchandise. |
| 12/31/25 | FREE LEGGINGS INSIDE | Fine print indicates that, in order to obtain the "free" leggings, recipient must purchase $79 worth of other merchandise. |
| 1/8/26 | Kim, get $10 off your next purchase! | Fine print indicates that, in order to get the promised $10 off, recipient would need to (a) complete a survey, and (b) spend a minimum of $50 on her next purchase. |

69. Fabletics initiated the transmission or conspired to initiate the transmission of the Subject Emails to Named Plaintiff.

70. Named Plaintiff has identified 7 emails with false or misleading subject lines sent to Named Plaintiff by Fabletics.

71. These emails were sent between November 25, 2025 and January 8, 2026, showing that Fabletics engaged in this conduct throughout the relevant time period.

## V. CLASS ACTION ALLEGATIONS

72. Named Plaintiff brings this action, both individually and as a class action, on behalf of similarly situated recipients of commercial electronic mail sent by Fabletics and seek to represent the following Class, defined as:

> **All Maryland residents to whom Fabletics sent, within three years before the date of the filing of this complaint until the date of trial, an email with a subject line that (a) states or implies that a particular promotion will end at a specified time, when the promotion continues beyond the specified end time; (b) states or implies that the recipient of the email will be given a free product, when the recipient must make a minimum purchase in order to obtain the purportedly free product; or (c) advertises a promotion that is subject to a minimum order amount or that is subject to the recipient enrolling in Fabletics' VIP Membership Program under the terms of the promotion, but fails to disclose either or both of those minimum requirements.**

Excluded from the Class are Defendants, as well as Defendants's affiliates, employees, officers and directors, and the Judge to whom this case is assigned.

73. The Class, as defined above, is identifiable. Named Plaintiff is a member of the Class.

74. The Class consists, at a minimum, of 50 consumers and is thus so numerous that joinder of all members is clearly impracticable.

75. There are questions of law and fact which are not only common to the Class, but which predominate over any questions affecting only individual members of the Class.

76. With respect to the Class, the common and predominating questions include, but are not limited to:

(a) Whether the emails Fabletics sent to the Class are subject to MCEMA § 14-3001, *et seq.*;

(b) Whether the subject lines of emails sent by Fabletics contain materially false or misleading information that has the capacity, tendency, or effect of deceiving the recipient, in violation of MCEMA § 14-3002;

(c) Whether Fabletics is subject to the $500 penalty set forth in MCEMA § 14-3003 for each of email it sends containing false or misleading information in the subject line;

(d) The nature and extent of Class-wide injury and damages.

77. Claims of Named Plaintiff are typical of the claims of the respective members of the proposed Class and are based on and arise out of similar facts constituting the wrongful conduct of Defendants.

78. Named Plaintiff will fairly and adequately protect the interests of the proposed Class.

79. Named Plaintiff is committed to vigorously litigating this matter.

80. Further, Named Plaintiff has secured counsel experienced in handling consumer class actions and complex consumer litigation.

81. Neither Named Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this claim.

82. Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class.

83. A class action is the superior method for fair and efficient adjudication of the controversy.

84. The likelihood that individual members of the proposed Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

85. The likelihood that individual members of the proposed Class will prosecute separate actions is remote also because each individual claim involves a relatively small amount.

86. Counsel for Named Plaintiff and the proposed Class is experienced in class actions and foresees little difficulty in the management of this case as a class action.

## VI. **CAUSE OF ACTION**

### **COUNT ONE**
### **(VIOLATION OF MARYLAND COMMERCIAL ELECTRONIC MAIL ACT § 14-3001, *ET SEQ.*)**

87. Named Plaintiff re-alleges and incorporates by reference the allegations set forth herein, and further alleges:

88. The Maryland Commercial Electronic Mail Act ("MCEMA") § 14-3001 defines "Commercial Electronic Mail" as "electronic mail that advertises real property, goods, or services for sale or lease."

89. The Subject Emails are "Commercial Electronic Mail," as the purpose of those emails was to advertise goods or services for sale.

90. MCEMA § 14-3002(b) contains the following prohibition related to Commercial Electronic Mail: "A person may not initiate the transmission [that] is sent to an electronic mail address that the sender knows or should have known is held by a resident of the State[, which] [c]ontains false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient."

91. Fabletics is the person that initiated the transmission of the Subject Emails.

92. Named Plaintiff and members of the Class have provided Fabletics with a shipping address, and/or a billing address, and/or a zip code, and/or a phone number with respect to orders made or accounts created by Named Plaintiff and members of the Class.

93. Named Plaintiff and members of the Class provided information about their residency when they created online accounts, including their shipping addresses, billing addresses, zip codes, and phone numbers.

94. At the time it sent the Subject Emails, Fabletics had access to the data described above regarding the location of consumers in Maryland to whom it sent the emails.

95. Named Plaintiff and members of the Class are and were, in fact, residents of Maryland at the time Fabletics transmitted the Subject Emails.

96. Named Plaintiff and members of the Class were the intended recipients of the Subject Emails.

97. Fabletics knew or should have known that Named Plaintiff and members of the Class, the intended recipients of the Subject Emails, are (and were) residents of the State of Maryland when Fabletics sent the emails.

98. MCEMA § 14-3003(c) provides that "[a] person who violates this subtitle is liable for reasonable attorney's fees and for damages . . . [t]o the recipient of commercial electronic mail, in an amount equal to the greater of $500 or the recipient's actual damages[.]"

99. Under MCEMA, it is irrelevant whether the aforementioned emails were solicited.

100. In violation of MCEMA § 14-3002, the Subject Emails subject lines with materially false or misleading information, which had the capacity, tendency, or effect of deceiving the recipients, in the ways described herein.

101. Fabletics's sending of each Subject Email is a discrete violation of MCEMA § 14-

3002.

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiff respectfully prays for judgment as follows:

A. An order assuming jurisdiction of this case;

B. an order certifying the Class under Maryland Rule 2-231(c)(3);

C. an order appointing Named Plaintiff as representative of the Class, and undersigned counsel as Class counsel for the Class;

D. an order awarding statutory damages pursuant to MCEMA § 14-3003 ($500 per violation) for Named Plaintiff[1] and the members of the Class;

E. an award of attorneys' fees, pursuant to the MCEMA § 14-3003;

F. an award of pre-judgment and post-judgment interest on all sums awarded to Named Plaintiff and the members of the proposed Class; and

G. award such other relief as the court deems appropriate.

## VII. DEMAND FOR JURY TRIAL

Named Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

The Toppe Firm, LLC

Dated: January 25, 2026

**/s/ Jeffrey C. Toppe**
Jeffrey C. Toppe, Esq. (CPF #1412180230)
4900 O'Hear Avenue, Ste. 100
North Charleston, SC 29405
(323) 909-2011
jct@toppefirm.com

**Attorney for Named Plaintiff**

[1] Pursuant to Maryland Rule 2-305, Named Plaintiff state that her individual claim for relief under MCEMA § 14-3003 total $3,500 (7 Subject Emails x $500 per email = $3,500).

## CERTIFICATION PURSUANT TO MARYLAND RULE 1-313

I, Jeffrey C. Toppe, hereby certify that I am an attorney in good standing within the State of Maryland, and I have been licensed to practice law in the State of Maryland since December 18, 2014. My Client Protection Fund number is CPF #1412180230.

**/s/ Jeffrey C. Toppe**
Jeffrey C. Toppe, Esq. (CPF #1412180230)
4900 O'Hear Avenue, Ste. 100
North Charleston, SC 29405
(323) 909-2011
jct@toppefirm.com

**Attorney for Named Plaintiff**